IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| FIRST RELIANCE STANDARD LIFE INSURANCE COMPANY, | |
| Plaintiff, | CIVIL ACTION |
| | NO. 19-cv-10494 |
| v. | |
| GIORGIO ARMANI CORPORATION, | COMPLAINT |
| Defendant. | |

Plaintiff First Reliance Standard Life Insurance Company ("First Reliance") complains and alleges against Defendant Giorgio Armani Corporation ("GAC") as follows:

## SUBJECT MATTER JURISDICTION

1. The Court has federal subject matter jurisdiction over the underlying dispute pursuant to 28 U.S.C. section 1331 under section 502(a) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a).

## VENUE

2. Venue is proper within the Southern District of New York pursuant to 29 U.S.C. section 1132(e)(2) because the acts complained of have occurred within this district.

## THE PARTIES

3. First Reliance is an insurance company incorporated in the State of New York. First Reliance maintains its principle place of business in New York City.

4. GAC is a New York corporation that maintains its principal place of business in New York City.

1418621v.1

**GENERAL ALLEGATIONS**

5. At all times relevant to this action, GAC was and is an apparel company that maintains and operates retail locations in the United States, including New York.

6. Sometime prior to January 1, 2013, GAC established and sponsored an employee welfare benefit plan, as that term is defined in ERISA section 3(1), 29 U.S.C. § 1002(1), for the benefit of its employees and the employees' dependents ("the Plan"). Under the terms of the Plan, GAC employees could enroll themselves and their eligible dependents for life insurance coverage.

7. At all times material hereto, GAC was a fiduciary of the Plan and Plan Administrator. *See*, 29 U.S.C. 1002(16), (21)(A).

8. On or about August 1, 2013, First Reliance issued Voluntary Group Term Life Policy number VG 183839 ("the Policy") to GAC to provide life insurance benefits to a certain defined group of eligible employees and their eligible dependents under the terms of the Plan. The Policy was amended effective January 1, 2016, to broaden the scope of eligible GAC employees.

9. The Policy, which has a January 1, 2016 effective date, provides benefits in the event of loss of life of an insured or an insured dependent.

10. The Policy defines a "Dependent" to mean:

   a. The employee's legal spouse;
   b. The employee's unmarried child(ren) from birth to 20 years of age, including any adopted child or stepchild who resides in the employee's home, and who is financially dependent on the employee for support;
   c. The employee's unmarried child(ren), including any adopted child or stepchild, who is attending a college or other school on a full-time basis, and who is financially dependent on the employee for support and under age 26; and

2

      d.  The employee's child(ren) beyond the limiting age who is incapable of self-sustaining employment by reason of intellectual disability or physical handicap and who is chiefly dependent on the employee for support and maintenance.

11. Regarding life insurance benefit amounts, the Policy provides:

> BENEFIT AMOUNTS:
> Each eligible employee and spouse may elect an Amount of Insurance (in increments of $10,000) for which he is eligible. The minimum amount of insurance coverage which may be elected is $10,000 and the maximum is $500,000, subject to age and evidence of insurability requirements, as applicable.

12. The Policy provides a Guaranteed Issue Amount to eligible persons who apply in writing for the insurance. Specifically, the Policy states:

> An Eligible Person must apply in writing for this insurance. Those employees eligible before or upon the Effective Date of this Policy must complete, sign and return the application during the initial enrollment period. All other employees must apply within thirty-one (31) days of becoming eligible. If insurance is applied for beyond the enrollment period or beyond thirty-one (31) days of becoming eligible, medical evidence of insurability will always be required; the only exceptions are life event changes (see CHANGES section) and any annual enrollment approved by us.
>
> EMPLOYEE: If an eligible employee is under the age of 70 and applies for coverage within 31 days of becoming eligible, up to $150,000 of insurance will be issued. The employee's Effective Date of coverage will be the date the application is signed, provided applicable premium is paid and any service waiting period has been satisfied.
>
> DEPENDENT SPOUSE: A Dependent spouse under age 70 will be eligible for guaranteed issue coverage, provided the eligible employee applies for such coverage within 31 days of becoming eligible. Spouse guaranteed issue coverage is limited to an amount up to $50,000.

13. Regarding amounts over the Guaranteed Issue Amount, the Policy states:

3

1418621v.1

>AMOUNTS OVER THE GUARANTEED ISSUE AMOUNT AND AMOUNTS APPLIED FOR AFTER THE INITIAL ELIGIBILITY PERIOD:
>
>An Eligible Person's Effective Date of coverage will be the date the application is signed, provided the Insurance Company agrees to insure such person and any additional premium is received.

14. The Policy also has the following provision related to Dependent Life Insurance:

    >EFFECTIVE DATE OF DEPENDENT INSURANCE
    >An Insured may insure his dependents by making written application, paying the applicable premium, and providing proof of good health.  The Insured must have insurance coverage under this Policy in order for Dependents to be insured.  The insurance for Dependents will take effect on the date:
    >(1)  We approve the required proof of good health; and
    >(2)  The applicable premium is paid.

15. GAC elected to act as the Administrator of the Policy and the Plan for purposes of enrollment and collection/remittance of premiums to First Reliance.  Specifically, GAC was responsible for providing coverage election materials and Policy information to its employees, collecting proof of good health from those employees and dependents when required under the Policy and providing these materials to First Reliance, calculating and collecting employee and dependent premiums, and remitting to First Reliance premiums for eligible individuals.  GAC is also responsible for maintaining all enrollment records.

16. In December 2015, Andrew Cho ("Mr. Cho") was diagnosed with pancreatic cancer.  At the time of the diagnosis, Mr. Cho was married to GAC employee Soohyun Cho ("Ms. Cho").

17. Approximately two months after Mr. Cho was diagnosed with pancreatic cancer, GAC held an open enrollment for its employees like Ms. Cho to enroll in its life insurance plan and elect life insurance coverage under the Policy.  On information and belief, GAC electronically distributed election materials to its employees, including Ms. Cho, through its

payroll provider, ADP.  Also on information, Ms. Cho electronically elected life insurance coverage for her husband, Mr. Cho.  At no time did GAC request or collect from Ms. Cho an Evidence of Insurability or Proof of Good Health form indicating that Mr. Cho was in good health at the time she elected coverage for him as required under the Policy.  Had GAC provided Ms. Cho with such a form, Ms. Cho would not have been able to complete it because Mr. Cho was, in fact, not in good health at the time she elected to enroll him.  He had been diagnosed with pancreatic cancer and was unable to work due to his condition.

18. At no time did GAC ever provide First Reliance with an Evidence of Insurability or Proof of Good Health form regarding Mr. Cho.  Consequently, First Reliance never approved life insurance coverage for Mr. Cho beyond the Guaranteed Issue Amount.

19. Mr. Cho died on or about June 28, 2017.

20. On or about October 24, 2017, First Reliance received a life insurance claim submitted by counsel for Ms. Cho.  The claim asserted that Ms. Cho was entitled to a benefit amount of $500,000 on account of the passing of Mr. Cho.  The Claim was the very first time that First Reliance heard of either Mr. or Ms. Cho because GAC administered its own plan and maintained in its possession all of the enrollment and coverage election information.

21. First Reliance began processing the claim by requesting from GAC copies of Ms. Cho's enrollment form for Mr. Cho.

22. Cinzia Gagliano, GAC's benefits supervisor in its human resources department did not provide First Reliance with the information it had requested.  Instead, on or about November 22, 2017, she provided First Reliance with a copy of the claim form that GAC had provided to Ms. Cho indicating that the amount of life insurance benefit to which she was

entitled was $50,000 because GAC did not have Evidence of Insurability on file.

23. First Reliance again requested the enrollment forms on or about December 21, 2017. Ms. Gagliano responded more than a month later on January 25, 2018 that GAC did not have the initial enrollment forms because the enrollment was done electronically.

24. By letter dated January 31, 2018, First Reliance paid Ms. Cho a life insurance benefit of $50,000, which was the Guaranteed Issue Amount.

25. On or about May 17, 2018, Ms. Cho filed a lawsuit against Reliance Standard Life Insurance Company seeking the payment of life insurance benefits in the amount of $500,000. Ms. Cho filed a First Amended Complaint on July 18, 2018 correcting the name of the Defendant to First Reliance Standard Insurance Company, which is a different entity from Reliance Standard Life Insurance Company. Ms. Cho did not, however, name GAC as a defendant.

## **FIRST CAUSE OF ACTION**
**(Equitable Indemnity under ERISA)**

26. Plaintiff, First Reliance, incorporates Paragraphs 1 through 27 as though fully set forth herein.

27. At all times herein, GAC self-administered enrollment for the Policy and was, therefore, responsible for providing coverage election materials and Policy information to its employees, providing and collecting proof of good health from those employees and dependents who elect coverage in excess of the Guaranteed Issue Amounts and providing those materials to First Reliance for a decision on eligibility, calculating and collecting employee and dependent premiums, and remitting those premiums to First Reliance. In doing so, GAC was acting in its capacity as fiduciary of the Plan.

28. In or about February 2016, GAC electronically distributed Policy information to its employees, including Ms. Cho. GAC also provided its employees, including Ms. Cho, the ability to electronically elect coverage under the Policy. GAC did not secure written enrollment or coverage election forms from its employees.

29. Because the benefit amount Ms. Cho elected for her husband exceeded the Policy's Guaranteed Issue Amount, GAC was responsible for securing written Evidence of Insurability or Proof of Good Health from Ms. Cho showing that Mr. Cho was in good health at the time she elected coverage for him.

30. GAC was also responsible for providing the Evidence of Insurability or Proof of Good Health to First Reliance so that First Reliance could review and either approve or deny Ms. Cho's application for insurance.

31. Because GAC failed to collect the Evidence of Insurability/Proof of Good Health from Ms. Cho, and because GAC failed to provide the Evidence of Insurability/Proof of Good Health to First Reliance, First Reliance never approved the proof of good health and Mr. Cho's insurance, therefore, never became effective in an amount in excess of the Guaranteed Issue Amount.

32. GAC's above-described conduct was negligent and in breach of its fiduciary duties under ERISA.

33. GAC was the sole Plan fiduciary responsible for enrollment, including informing Plan participants of the terms of the Plan, providing Evidence of Insurability/Proof of Good Health forms when required, submitting completed forms to First Reliance and paying premiums for the correct amount.

34. As a proximate result of GAC's negligence and breaches, and through no fault of its own, First Reliance has been sued by Ms. Cho in the instant action seeking the payment of life insurance benefits in the amount of $500,000, which is $450,000 in excess of the Guaranteed Issue Amount.

35. Because First Reliance's actions regarding Ms. Cho's enrollment of her husband and claim for life insurance benefits were, at all times, reasonable, First Reliance is entitled to equitable indemnification from GAC against any judgment that may be entered against First Reliance in this action.

**SECOND CAUSE OF ACTION**
**(Contribution under ERISA)**

36. Plaintiff, First Reliance, incorporates Paragraphs 1 through 37 as though fully set forth herein.

37. At all times herein, GAC self-administered the Policy and was, therefore, responsible for providing coverage election materials and Policy information to its employees, processing employee and dependent coverage elections in accordance with the terms and conditions of the Policy, collecting proof of good health from those employees and dependents who elect coverage in excess of the Guaranteed Issue Amounts and providing it to First Reliance, calculating and collecting employee and dependent premiums, and remitting those premiums to First Reliance.

38. In or about February 2016, GAC electronically distributed Policy information to its employees, including Ms. Cho. GAC also provided its employees, including Ms. Cho, the ability to electronically elect coverage under the Policy. GAC did not secure written enrollment or coverage election forms from its employees.

39. Because the benefit amount Ms. Cho elected for her husband exceeded the Policy's Guaranteed Issue Amount, GAC was responsible for securing written Evidence of Insurability or Proof of Good Health from Ms. Cho showing that Mr. Cho was in good health at the time she elected coverage for him.

40. GAC was also responsible for providing the Evidence of Insurability/Proof of Good Health to First Reliance so that First Reliance could review and either approve or deny Ms. Cho's application for insurance.

41. Because GAC failed to collect the Evidence of Insurability/Proof of Good Health from Ms. Cho, and because GAC failed to provide the Evidence of Insurability or Proof of Good Health to First Reliance, First Reliance never approved the proof of good health and Mr. Cho's insurance, therefore, never became effective in an amount in excess of the Guaranteed Issue Amount.

42. As a proximate result of GAC's negligence and breach of its fiduciary duty, and through no fault of its own, Ms. Cho has asserted claims against First Reliance seeking the payment of life insurance benefits in the amount of $500,000, which is $450,000 in excess of the Guaranteed Issue Amount.

43. GAC was the sole Plan fiduciary responsible for enrollment, including informing Plan participants of the terms of the Plan, providing Evidence of Insurability/Proof of Good Health forms when required, submitting completed forms to First Reliance and paying premiums for the correct amount.

44. In the event that a court finds that a contract of insurance did issue to Ms. Cho on the life of Mr. Cho in a benefit amount of $500,000 as a result of GAC's conduct, First Reliance

is entitled to 100% contribution from GAC to cover the amount of insurance in excess of the Guaranteed Issue Amount as well as any fees incurred by First Reliance in defending such a claim.

45. Upon information and belief, there may be other individuals who were improperly enrolled in the Plan by GAC.

46. At all times material hereto, GAC was knew of its duties under the Plan to only enroll and accept premiums only from eligible individuals.

47. At all times material hereto, GAC failed to exercise reasonable care in the performance of its fiduciary duties as set forth above.

48. To the extent it is found that First Reliance is liable to Ms. Cho, which is specifically denied, it was due to GAC's failure to reasonably and properly carry out its duties under the Plan, and GAC is liable to First Reliance for contribution and/or indemnity.

49. The Second Circuit recognizes claims under ERISA for contribution and indemnity against a co-fiduciary. *See Smith v. Local 819 I.B.T. Pension Plan*, 291 F.3d 236 (2d Cir. 2002).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff First Reliance prays that the Court grant it the following relief:

1. Declare that GAC violated the terms of the Plan and the Policy and its fiduciary duties under ERISA through the manner in which it attempted to enroll Mr. Cho in dependent coverage;

2. Declare that Defendant GAC is required to indemnify First Reliance against any judgment that may be entered against it by any court related to the claims of Ms. Cho;

3. Declare that in the event a Court determines that a contract of insurance did issue to Ms. Cho on the life of Mr. Cho in a benefit amount of $500,000 as a result of GAC's conduct, First Reliance is entitled to 100% contribution from GAC to cover the amount of insurance in excess of the Guaranteed Issue Amount together with any reasonable attorney's fees incurred in defending the claim/lawsuit.

4. For an Order requiring GAC to properly administer the Plan;

5. For reasonable attorney's fees and costs; and

6. For such other relief as the Court may deem appropriate.

          Respectfully submitted,

          WILSON ELSER MOSKOWITZ
          EDELMAN & DICKER, LLP

BY: *s/Joshua Bachrach*
     Joshua Bachrach, Esquire
     Heather J. Austin, Esquire
     Two Commerce Square
     2001 Market Street, Suite 3100
     Philadelphia, PA 19103
     Telephone: (215) 627-6900
     Facsimile: (215) 627-2665
     Email: Joshua.Bachrach@wilsonelser.com
           Heather.Austin@wilsonelser.com

     Attorneys for Plaintiff, First Reliance
     Standard Life Insurance Company

Date: November 12, 2019